# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 21-479V

| | |
|---|---|
| HELEN OSGOOD,<br><br>      Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>      Respondent. | Chief Special Master Corcoran<br><br>Filed: July 15, 2025 |

*Paul R. Brazil*, Muller Brazil, LLP, Dresher, PA, *for Petitioner.*

*Katherine Edwards*, U.S. Department of Justice, Washington, DC, *for Respondent.*

### RULING ON ENTITLEMENT[1]

On January 11, 2021, Helen Osgood filed a Petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") following her receipt of an influenza ("flu") vaccine on September 26, 2019. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

After review of the record and the parties' arguments, I conclude that Petitioner's shoulder pain more likely than not began within 48 hours of vaccination, and that she

---

[1] Because this ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

suffered the residual effects or complications of a SIRVA for more than six months after the administration of the vaccine. Petitioner has established all other requirements for a Table SIRVA. Accordingly, she is entitled to compensation.

I. **Procedural History**

On October 20, 2021, this case was assigned to the SPU. ECF No. 12. After obtaining a subpoena, Petitioner completed filing her medical records on March 31, 2022. ECF Nos. 11, 31. Respondent represented thereafter that he intended to defend this case and filed a Rule 4(c) Report on March 13, 2023. ECF Nos. 21, 24 (Rule 4(c) Report). Respondent opposed entitlement on the ground that "Petitioner cannot preponderantly establish an onset of shoulder pain within 48 hours of vaccine administration, as required for a Table claim." ECF No. 24 at 5. Respondent further argued that Petitioner could not meet the six-month severity requirement because of a long gap in treatment. *Id.* at 6.

I set this matter on a briefing schedule to address the issues raised in Respondent's Rule 4(c) Report. ECF No. 25. Petitioner filed a motion for a ruling on the record on June 26, 2023. ECF No. 26 ("Pet'r Mot."). Respondent filed a response to this motion on September 7, 2023. ECF No. 28 ("Resp't Opp'n"). Petitioner did not file a reply in support of her motion. The matter is now ripe for adjudication.

II. **Relevant Evidence**

I have reviewed all of the evidence filed to date. I will only summarize or discuss evidence that directly pertains to the determinations herein, as informed by the parties' respective citations to the record and their arguments.

At the time of vaccination, Petitioner was 69 years old and employed as a commercial real estate attorney. *See* Ex. 5 at 13, 16. Petitioner's medical history was significant for skin cancer, mitral valve prolapse, and obstructive sleep apnea. Throughout 2019, Petitioner was seen by doctors at Mount Sinai Hospital in New York City for treatment of these conditions. *See* Ex. 5 at 18, 20, 23, 25; Ex. 10 at 47, 51, 66, 72, 79, 87, 94. Petitioner did not have any prior injury or pain in left shoulder.

On September 26, 2019, Petitioner received a flu vaccine in her left deltoid at a Walgreens pharmacy. Ex. 1 at 2-4. On October 26, 2019, Petitioner used the MyChart system to send a message to her primary care provider ("PCP") at Mount Sinai, Dr. Camila Passias. Ex. 8 at 6. Petitioner wrote,

> I had a flu shot about 3 weeks ago and still have pain/limited motion in that arm (had to take motrin last night and sore now even in resting position now

2

> it hurts). Haven't had this before with a flu shot; I assume the Walgreens person placed the needle too close to my shoulder.
>
> Should I (i) see you first and get your recommendation or (ii) try physical therapy and follow up with you if I don't have improvement?
>
> I got the 1st shingles shot last week and that arm has no lingering problem!
>
> Thank you.

Ex. 8 at 6.

> On October 29, 2019, Dr. Passias responded,
>
> I'm sorry this happened. This is not something physical therapy will help, it just has to heal on its own. Sometimes the needle enters the wrong space and can cause discomfort for a few weeks. Alternate between hot and cold compresses and take anti inflammatories as needed. Hopefully this [will] help speed the healing process.

*Id.*

On January 9, 2020, Petitioner had an appointment with Dr. Aaron Springarn at Mount Sinai. Ex. 10 at 37. Petitioner complained of a blocked left ear for several weeks and two colds. *Id.* Dr. Springarn noted that Petitioner was improving and had a history of allergies. *Id.* It does not appear that Petitioner mentioned any left shoulder issues at this appointment. *See id.* at 37-39.

On February 4, 2020, Petitioner had an appointment with Dr. Freddie Verzosa for a routine annual physical. Ex. 6 at 7. Petitioner's only complaint at this appointment was recorded as "four month hx of left shoulder pain with abduction – occurred after flu injection as per patient." *Id.* Dr. Verzosa diagnosed Petitioner with "likely mild rotator cuff strain" and recommended her for physiatry. *Id.* at 12.

On referral from Dr. Verzosa, Petitioner met with Dr. Allen Spinner on March 9, 2020 at Mt. Sinai's Interventional Pain, Spine and Sports Medicine Practice. Ex. 3 at 8-12. Dr. Spinner stated that Petitioner's left shoulder complaint "began end of 2019 after having a flu shot." *Id.* at 9. He further stated, "[t]he pain is described as aching. The pain is graded as mild. Exacerbating factors include arm behind the back. Alleviating factors include rest." *Id.* Petitioner informed Dr. Spinner that she felt that the pain was worsening. *Id.* Dr. Spinner determined that Petitioner had restriction in the range of motion in her left arm consistent with adhesive capsulitis. *Id.* at 3-11. Dr. Spinner recommended that

3

Petitioner start physical therapy ("PT") and then imaging and further intervention if she did not see improvement. *Id.* Petitioner was told to return in six weeks for follow-up. *Id.*

Petitioner's next medical appointment was on August 20, 2020, with Dr. Verzosa for back pain, lower abdominal pain, and nausea that had been ongoing for the past two weeks.[3] Ex. 10 at 23. Dr. Verzosa ordered laboratory tests and a spinal x-ray, but believed that Petitioner's pain was muscular in nature. *Id.* at 27. It does not appear that Petitioner mentioned her left shoulder at this appointment.

Petitioner did not have any further medical appointments until August 2020. On August 25, 2020, Petitioner had an appointment with a cardiologist regarding her mitral valve prolapse. Ex. 5 at 13. Petitioner saw the cardiologist again on September 29, 2020, for further testing and follow-up for this issue. *Id.* at 7. Separately, related to her history of obstructive sleep apnea, Dr. Verzosa referred Petitioner to a dentist for a second opinion on potential removal of an exostosis on her left palate. *See* Ex. 10 at 14. Petitioner met with this dentist on September 9, 2020. *Id.* Petitioner also had a telemedicine appointment to obtain a refill of her medication for her eye allergies on October 16, 2020. *Id.* at 7-8.

On November 11, 2020, Petitioner had a telemedicine appointment with PT Jessica Silva. Ex. 4 at 7-10. Ms. Silva found that Petitioner had symptoms consistent with of adhesive capsulitis of the left shoulder and impingement syndrome. *Id.* at 7, 9. Ms. Silva wrote,

> Pt reports sudden onset L shoulder pain starting the day after getting her flu shot (in the same arm) in the Fall of 2019. She reports that the pain persisted and worsened and movement of her shoulder became painful and limited. Her PCP told her there was nothing that she could do and to wait it out. Eventually the pt sought a physiatry consult in March 2020 and was dx'd with adhesive capsulitis. PT was recommended but pt has not been able to get treatment due to COVID concerns. Pt reports that her pain gradually decreased but there has been no improvement in the past few months, and her shoulder motion has also remained very limited. This pt is working from home at a makeshift desk setup. She recently switched from using a laptop to a desktop and is still struggling with alignment/placement of her keyboard and mouse. She mostly types/mouses with her R hand so her L shoulder isn't as affected.

---

[3] This record states that Petitioner also had a gynecologist appointment the same day, August 20, 2020.

> Specific injury: Pt describes pain down lateral shoulder to upper arm. Pain is worst with bathing and dressing where she has to reach behind back or out to side to put on jacket.

*Id.* Ms. Silva stated that Petitioner would benefit from further PT and recommended a schedule of twice a week for the next four weeks. *Id.* at 9. However, there are no records indicating if Petitioner followed up with additional sessions.[4]

### III.     Analysis

#### A.     Applicable Legal Standards

To receive compensation under the Vaccine Program, a petitioner must prove either (1) that he suffered an injury falling within the Vaccine Injury Table, or (2) that he suffered an injury that was actually caused by his vaccine. *See* Sections 13(a)(1)(A) and 11(c)(1). Under either method, however, a petitioner must demonstrate that the injured person has "suffered the residual effects or complications of his illness, disability, injury, or condition for more than six months after the administration of the vaccine."[5] Section 11(c)(1)(D)(i).

The Act prohibits finding that a petitioner has met this burden "based on the claims of a petitioner alone, unsubstantiated by medical records or by medical opinion." Section 13(a). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993). However, the Federal Circuit has recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record.

---

[4] The only record after the November 11, 2020 PT appointment is from an endocrinologist that Petitioner saw regarding a thyroid nodule on July 1, 2021. Ex. 9 at 13.

[5] Petitioner does not allege, nor would the evidence support, either alternative for establishing the severity requirement: that the alleged injury resulted in death, or "inpatient hospitalization and surgical intervention." Section 11(c)(1)(D)(ii), (iii).

Section 13(b)(1). The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 204 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014) (citing Section 12(d)(3); Vaccine Rule 8).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*.

Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of an influenza vaccine. 42 C.F.R. § 100.3(a)(XIV). The criteria establishing a SIRVA under the accompanying Qualifications and Aids to Interpretation ("QAI") are as follows:

> *Shoulder injury related to vaccine administration (SIRVA).* SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:
>
> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time frame;

(iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

(iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

### B. Petitioner Has Established By Preponderant Evidence The Onset Of Left Shoulder Symptoms Within 48 Hours Post-Vaccination

The first entitlement issue for a Table SIRVA that Respondent disputes is whether Petitioner's left shoulder pain began within forty-eight (48) hours of her September 26, 2019 vaccination. 42 C.F.R. §§ 100.3(a)(XIV)(B), (c)(10)(ii).

In challenging this criterion, Respondent's Rule 4(c) Report ignores Petitioner's October 26, 2019 message to Dr. Passias. *See* Rule 4(c) Report at 1-2. Respondent incorrectly asserts that Petitioner waited until her February 4, 2020 appointment with Dr. Verzosa, four months and nine days after vaccination, to report any issue with her left shoulder. *See id.* at 2, 5. Respondent's response to Petitioner's motion for a ruling on the record acknowledges the complaint to Dr. Passias, but characterizes Petitioner's wording as "ambiguous as to whether there was an onset within the requisite statutory period." Resp't Opp'n at 2. Respondent also asserts that Petitioner had a "significant delay" in seeking treatment after communicating with Dr. Passias and had other medical appointments without mentioning her shoulder. *Id.*

I find that Petitioner has established onset of shoulder pain within 48 hours, consistent with a Table SIRVA. Petitioner consistently informed her treaters of pain that is most reasonably understood as beginning shortly after vaccination. Petitioner messaged Dr. Passias that she had received the flu vaccine "about three weeks ago" and "still" had pain and limited motion in that arm. Ex. 8 at 7. Next, Dr. Verzosa recorded a "four month hx" of left shoulder pain that occurred "after" the injection. Ex. 6 at 7. Dr. Spinner reported that Petitioner's issues began "end of 2019 after having a flu shot." Ex. 3 at 9. And most specifically and persuasively, Petitioner explained to Ms. Silva that she had "sudden onset L shoulder pain starting the day after getting her flu shot (in the same arm) in the Fall of 2019." Ex. 4 at 7. Petitioner made these statements for the purpose of obtaining medical treatment, and there is no record of any alternative, later onset.

In denying that these record portions support Table onset, Respondent effectively demands that petitioners use a degree of precision in describing their pain onset that is highly uncommon in SIRVA cases. For example, Respondent suggests that Petitioner's report of a four-month history of left shoulder pain to Dr. Verzosa is not consistent with a 48-hour onset because it was actually *four months and nine days* since vaccination. Resp't Opp'n at 2. But within the Vaccine Program, terms like "since," "shortly after," and "following" the vaccination are typically understood to "mean *very* close in time – immediately, or at most within a day or two" after vaccination. *Flowers v. Sec'y of Health & Hum. Servs.*, No. 20-285V, 2024 WL 2828211, at *11 (Fed. Cl. Spec. Mstr. May 8, 2024), *mot. for rev. den'd*, 173 Fed. Cl. 613 (2024).

I also do not find that the gaps in Petitioner's treatment, or the fact that she sought treatment for conditions other than her left shoulder, outweigh her reports of onset shortly after vaccination. *See* Resp't Opp'n at 2. Petitioner did not *initially* delay treatment significantly, but instead messaged Dr. Passias on October 26, 2019, only one month after vaccination. However, Petitioner was expressly told by Dr. Passias to wait for her shoulder pain to resolve on its own. *See* Ex. 8 at 7. It is therefore understandable that she would not immediately seek further treatment for her left shoulder, and did not discuss this issue with Dr. Springarn on January 9, 2020, separate from the fact that this appointment was for an unrelated concern about ear blockage. *See* Ex. 10 at 37. Further, and contrary to Respondent's contention, any delays in how Petitioner sought treatment for her left shoulder pain *after* she first reported it is not necessarily probative for determining when her symptoms actually started.

### C. Petitioner Has Established By Preponderant Evidence That She Suffered Residual Effects For More Than Six Months

I also resolve Respondent's challenge to severity in Petitioner's favor. Petitioner's November 11, 2020 appointment with Ms. Silva demonstrates that she suffered from pain and limited motion in her left shoulder for more than six months after vaccination, thus satisfying the statutory severity requirement. At this appointment, Petitioner specifically stated that her pain "persisted and worsened" after vaccination, and that even though the paid had "gradually decreased," there had been no improvement "in the past few months and her shoulder motion ha[d] also remained very limited." Ex. 4 at 7. Petitioner also mentioned that her left shoulder affected how she used the computer. *Id.* This record provides preponderant evidence that Petitioner was still experiencing left shoulder symptoms more than a year after her vaccination.

Respondent's only argument on severity is that during the eight-month gap between her March 9, 2020 physiatry appointment and November 11, 2020 PT

appointment, Petitioner saw other treaters, and thus could have done more to address her shoulder. Resp't Opp'n at 2. Respondent appears to disbelieve Petitioner's statement to Ms. Silva that the COVID-19 Pandemic affected her ability to obtain PT because she "attended multiple medical visits during this same timeframe." *See id.* At most, this evidence goes to damages, not to whether the Act's foundational severity requirement is met.

Petitioner's medical history establishes the severity requirement. Although Respondent invokes the prohibition in Section 13(a)(1) against establishing causation "based on the claims of a petitioner alone, unsubstantiated by medical records or by medical opinion," that does not apply here. *See id.* at 3. Petitioner's report of persistent pain and limited range of motion is substantiated by the November 11, 2020 medical record and Ms. Silva's examination, findings, and recommendation.

### Conclusion and Scheduling Order

Respondent does not raise any other objections to entitlement. *See generally* Rule 4(c) Report. Based on my independent review, I find that Petitioner has preponderantly established all requirements for a Table SIRVA claim. 42 C.F.R. § 100.3(c)(10). Accordingly, she need not prove causation-in-fact. Section 11(c)(1)(C). I also find that Petitioner has satisfied all other statutory requirements. Section 11(c)(A), (B), and (D).

For the foregoing reasons, **I find that Petitioner has established entitlement and is thus entitled to compensation for a left-sided Table SIRVA following her September 296, 2019 flu vaccine administration.**

The case is now formally in the damages phase. The parties are encouraged to pursue informal resolution of an appropriate damages award. If the parties determine that informal resolution is not possible, they should be prepared to promptly brief the appropriate award of damages.

**By no later than Friday, August 15, 2025**, Petitioner shall file a Status Report updating me on the parties' efforts towards informally resolving damages.

IT IS SO ORDERED.

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master